LORENZO MACINO AND VIVALDI MICHAELI, PLAINTIFFS IN ERROR v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Larceny — taking goods from the owner with intent to steal — though by his delivery, made, however, without intent to pass the title, constitutes larceny.*

WRIT OF ERROR to the Court of General Sessions of the county of New York, to review the conviction of the relator of the crime of grand larceny.

The prisoners were convicted of larceny, for stealing American and French gold coin, owned and possessed by the complaining

witness.   It was urged in their behalf, that their offense, if they were proved to have committed any, was that of obtaining the money by false pretenses, and not that of larceny.   But the court held, that the evidence was sufficient to justify the submission of the case to the jury as one of larceny.   To that view, the counsel for the prisoners excepted, and that exception presents the real point made in their behalf.   The complaining witness and the prisoners appeared to be Italians.   The complainant was a barber, and by the pursuit of that occupation, had accumulated about $400 ; and was in New York to engage and take his passage to Italy.   In the vicinity of the shipping office, he encountered the prisoner, Michaeli, who engaged him in conversation.   They were soon afterwards joined by the other prisoner, who appeared in the role and garb of a priest. These two persons professed to be also on their way to Italy and represented that they could secure the tickets at a lower rate than from the office, at which it was the intention of the complaining witness to apply.   Macino represented himself to be a priest of the Catholic church, and was fortified in the statement by the other prisoner.

The former addressed the complaining witness devoutly, and finally confessed him.   He also exhibited his money in a valise and in his pocket, and was represented by the other person as being very rich.   That other one then said to the witness, "if you have some money, you may give it to him, because he is very rich."   He testified that he then gave the money, $400 in American gold and fifteen French gold pieces to the small man, and he handed it to the priest. His reason, he stated, for doing so, was that he was a good priest, talked to him about God, and wanted to take care of him to Italy, and would speak to God for him.   Upon being more closely pressed for his reason in parting with his money, by the cross-examination of the prisoner's counsel, he answered :   " I gave him the money because it was surer in his possession, because he had plenty of money with him."   " I gave it to him for both reasons, because he had money and was going to Italy."   " He told me he was a priest."   " I gave them the money voluntarily because I had confidence he was a good priest."

After the money had been secured, the witness was given two twenty-five cent pieces, with which he was sent for segars. And when he returned with them, the prisoners had disappeared.

The court at General Term said : " The point made upon this evidence in favor of the prisoners is that the complaining witness intended, when he handed over the money, to part with the title to it, as well as the possession of it. And if that be true, then a case of larceny was not presented by the evidence. But the testimony given was clearly susceptible of a different construction. The answer of the witness, that he gave him the money because it was surer in his possession, indicates the existence of a purpose only to make a delivery of its custody. There was no apparent reason in what had transpired, for believing that a gift of the money was designed. But, what was the more rational view of the evidence, and the one adopted by the jury, was that the money was placed in the hands of the person supposed to be a priest, merely to be carried for the owner to Italy. It was certainly capable of supporting that conclusion. And for that reason the court would not have been warranted in taking the case from the consideration of the jury. Where evidence is the subject of different views, indicating the propriety of conflicting conclusions, it is the province of a jury to determine which may be the more reasonable, and, therefore, the one to be adopted and followed.

In that respect, the present case differed entirely from that of *Kelly* v. *People* (13 N. Y. S. C., 509) ; for there, the evidence unequivocally established the intent of the prosecuting witness to be to part with the title, as well as the possession of his money. And the case made out, was accordingly held to be one of false pretenses, and not one of larceny.

The fact that the owner may voluntarily deliver over the custody of his property, does not protect the person procuring it from the legal charge of larceny, where it is received by him with a felonious intention. The rule on that subject has been held, that, if, under all the circumstances of the case, it be found that a party has taken goods from the owner though by his delivering, with an intent to steal them, such taking amounts to felony. (Wharton's Am. Crim. Law [4th ed.], § 1855.) And that was the conclusion maintained in *Weyman* v. *People* (11 N. Y. S. C., 511 ; 62 N. Y., 622.) The cases of *People* v. *McDonald* (43 N. Y., 61) ; *Hilderbrand* v. *People* (8 N. Y. S. C., 19 ; 56 N. Y., 394), and *Smith* v. *People* (53 N. Y., 111) are also to the same effect."

*Wm F. Howe,* for the plaintiff in error. *Horace Russell,* assistant district attorney, for the defendants in error.

Opinion by DANIELS, J.; DAVIS, P. J., and BRADY, J., concurred. Conviction affirmed.